Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/11/2020 08:07 AM CDT

**State of Nebraska, appellee, v.
Daniel R. Seaman, appellant.**

\_\_\_ N.W.2d \_\_\_

Filed July 28, 2020.    Nos. A-19-746, A-19-747.

1. **Constitutional Law: Due Process.** The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law.
2. **Judgments: Appeal and Error.** When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.
3. **Courts.** Termination from a drug court program is a matter entrusted to the discretion of the trial court.
4. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
5. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
6. **Judgments: Words and Phrases.** Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
7. **Courts: Probation and Parole: Due Process.** Drug court program participants are entitled to the same due process protections as persons facing termination of parole or probation.
8. **Probation and Parole: Due Process.** At a hearing to determine revocation of parole or probation, the following minimum due process protections apply: (1) written notice of the time and place of the hearing; (2) disclosure of evidence; (3) a neutral factfinding body or person, who should not be the officer directly involved in making recommendations; (4) opportunity to be heard in person and to present witnesses and

documentary evidence; (5) the right to cross-examine adverse witnesses, unless the hearing officer determines that an informant would be subjected to risk of harm if his or her identity were disclosed or unless the officer otherwise specifically finds good cause for not allowing confrontation; and (6) a written statement by the fact finder as to the evidence relied on and the reasons for revoking the conditional liberty.

 9. **Probation and Parole: Due Process: Evidence.** A parole or probation revocation hearing is not a criminal prosecution, and the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

10. **Courts: Probation and Parole: Evidence: Witnesses.** Despite the flexible standard for drug court program termination and parole or probation revocation hearings which allows the consideration of hearsay evidence inadmissible under the rules of evidence, absent a showing of good cause, the drug court participant, parolee, or probationer has the right to confront adverse witnesses with personal knowledge of the evidence upon which the termination or revocation is based.

11. **Courts: Proof.** In drug court termination proceedings, the State bears the burden of proving, by a preponderance of the evidence, the alleged grounds for termination.

12. **Evidence: Words and Phrases.** A preponderance of the evidence is the equivalent of the greater weight of the evidence.

13. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

14. **Sentences.** In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. The sentencing court is not limited to any mathematically applied set of factors.

15. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeals from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Jonathan M. Frazer, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

Moore, Chief Judge, and Arterburn and Welch, Judges.

Moore, Chief Judge.

## INTRODUCTION

Following Daniel R. Seaman's plea-based convictions in two separate cases in the district court for Lancaster County—case No. A-19-746 (the first burglary case) and case No. A-19-747 (the second burglary case)—the court transferred both cases to a drug court program in lieu of sentencing at that time. The court subsequently terminated Seaman's participation in the program and sentenced him on the underlying convictions. Seaman appeals, asserting that the court terminated him from drug court participation without due process, improperly received certain evidence, erred in finding sufficient evidence to terminate his participation in the drug court program, and imposed excessive sentences in both cases. The cases have since been consolidated for briefing and disposition by this court. For the reasons set forth herein, we affirm.

## BACKGROUND

*The First Burglary Case.*

In the first burglary case, the State filed an amended information, charging Seaman with two counts of burglary in violation of Neb. Rev. Stat. § 28-507 (Reissue 2016), Class IIA felonies; one count of criminal possession of a financial transaction device, two or three devices, in violation of Neb. Rev. Stat. § 28-621(3) (Reissue 2016), a Class IV felony; and theft by unlawful taking, $5,000 or more, in violation of Neb. Rev. Stat. §§ 28-511 and 28-518(1) (Reissue 2016), a Class IIA felony.

A plea hearing was held on October 16, 2018, and Seaman's attorney informed the district court that while there was no plea agreement, Seaman was eligible to and intended to participate in the drug court program in both cases. Seaman pled

guilty to all the charges of the amended information in the first burglary case. The factual basis provided by the State indicates that in April 2018, Seaman was involved in the theft and use of financial transaction devices and a vehicle that were taken during two residential break-ins.

The district court accepted Seaman's pleas and found him guilty of the charges in the first burglary case. At a subsequent hearing, Seaman signed a drug court bond after having been formally accepted into the drug court program.

*The Second Burglary Case.*

In the second burglary case, the State filed an amended information, charging Seaman with three counts of burglary in violation of § 28-507, Class IIA felonies; one count of theft by unlawful taking, $5,000 or more, in violation of §§ 28-511 and 28-518(1), a Class IIA felony; and one count of first offense resisting arrest in violation of Neb. Rev. Stat. § 28-904(1) (Reissue 2016), a Class I misdemeanor.

At the October 16, 2018, plea hearing, Seaman pled guilty to all the charges of the amended information in the second burglary case. The events recited by the State in the factual basis for that case show that in July 2018, Seaman was involved in the theft of a vehicle and various items of personal property from three different garages. Police officers were called to one of the locations while Seaman and another individual were in a garage removing items. The two men ran from the officers, and Seaman engaged in a struggle with one of the officers before being arrested.

As with the first burglary case, the district court accepted Seaman's pleas in the second burglary case, finding him guilty of the charges, and Seaman signed a drug court bond at a later hearing.

*Drug Court Violation in Both Cases.*

The State filed alleged drug court violations in both cases, and a termination hearing was held before the district court on April 24, 2019. The State presented testimony from Seaman's

drug court supervision officer, and the court received various exhibits offered by the State. Seaman offered testimony from his mother and also testified in his own behalf.

Jesseca Doetker-Parker (Parker) had been supervising Seaman in the drug court program since October 2018. According to Parker, the drug court violations had been filed against Seaman because he had been cited for assault, had not answered all the questions of his supervision officer honestly, had resided or stayed in a place not approved by the drug court, and had not followed the rules of the drug court handbook.

Parker testified that on March 13, 2019, Seaman notified her that he had been cited for assault. Seaman also told Parker that he was going to the victim's house to get the victim "to tell the truth," and Parker told him not to do so. Seaman objected to the State's offer of the police reports for the assault investigation, which were reviewed by Parker in her assessment of the matter. Seaman's attorney argued that the reports were hearsay within hearsay if offered for the truth stated therein. He stated, however, that he would not object if the reports were being offered for the limited purpose of their effect on Parker and her decision to proceed with the drug court violation. The State argued that while the reports were something Parker considered, the State was also offering them for the truth, because the rules of evidence do not apply at a drug court violation hearing. The district court overruled Seaman's objection and received the reports.

Seaman also objected to the State's offer of photographs of the injuries of the assault victim on the basis of foundation. During voir dire by Seaman's attorney, Parker stated that she was not familiar with the victim, did not take the photographs, and did not know who took them. Upon further questioning by the State, Parker testified that she thought she had received the photographs from the police, that she understood them to be photographs taken as part of the assault investigation, and that she had reviewed and considered them prior to the drug court violation hearing. Seaman made the same objection when the

State reoffered the photographs, but the district court overruled the objection. The court also received another exhibit, without objection, showing the mapped area of where the assault was alleged to have occurred.

Parker spoke with Seaman the day after the assault, and Seaman completed a written statement, which statement was received into evidence. In the statement, Seaman detailed his whereabouts on the day in question, asserted that his mother dropped him off at work at a particular time, and denied assaulting anyone.

Parker also testified about text messages and other information from Seaman's cell phone relevant to the drug court violations. On March 26, 2019, Parker found text messages on Seaman's phone, indicating that he was using "mushrooms" and "acid" and mentioning that these are substances for which the drug court does not test. The recipient of these messages was reportedly a coworker of Seaman's, and some of her responses via text and/or on a social media application showed "large amounts of marijuana." Parker also found text messages showing Seaman's contact with people whom he was not supposed to have contact, and she found evidence that Seaman had deleted someone from a social media application on his phone. According to Parker, Seaman was not allowed to delete anything from his phone. One of the people Seaman was contacting was his child's mother, who was actively using drugs. He was also contacting his child's grandmother, whom he had been told previously to stop contacting after it was discovered that she was also actively using drugs. Because Seaman's child was residing with the grandmother, Parker spoke to Seaman about "having a third party make those exchanges." Parker also found evidence that Seaman was contacting the victim of the assault, after he had been told not to on several occasions, including by the drug court judge.

Parker also testified about the allegations of Seaman's not answering her questions truthfully and residing in an unapproved location. Parker testified that when she examined

Seaman's phone during a meeting, she asked him about a certain phone number. Seaman initially told her that the number belonged to his child's grandmother, but he eventually admitted that it belonged to the child's mother. Parker also testified that although Seaman was not approved to live with the grandmother, and had been told that he was not allowed to do so, certain messages on his phone suggested that he would go to the grandmother's after checking in at his approved residence. When Parker inquired, Seaman told her that he would go to the grandmother's residence after work, but he denied living there.

The district court received a copy of the handbook for the drug court program, as well as a written statement from Seaman that Parker asked him to make after she went through his phone and found "several violations." Parker testified that drug court participants received the handbook, which explains the expectations for the program, "at intake" and that they "go over it" during orientation. Participants are also given a quiz to verify their understanding of the program. The handbook contains rules regarding the progressive sanctions that may be imposed for violations of the bond conditions. According to Parker, Seaman violated the handbook rule that he was not to delete anything off of his phone, and she testified further about the text messages she found and Seaman's contact with prohibited individuals, including the assault victim. In Seaman's statement, he admitted to having been "dishonest about a few things," such as his contact with the individuals discussed above. He denied having used any illegal drugs or alcohol since his relapse with alcohol that occurred in December 2018 and claimed that his text message about drug use was "just another lie to try & sound cool & get something from this person." As to the assault citation, Seaman stated that he "did not bager [sic] a witness or anything" and that "[the assault victim] is doing it all on his own free will with zero influence threats or anything from me except me asking the truth from him." Seaman also indicated that stopping

contact with the mother of his child was more difficult for him than quitting drugs, and he expressed his desire to continue in the drug court program.

Parker described the five phases of the drug court program. Seaman was currently in the second phase, which requires drug testing. Parker testified that Seaman's tests had been clean, except for his alcohol relapse in December 2018. She verified that the drug court program does not test for mushrooms and acid, the substances referenced in one of Seaman's text messages.

Parker testified about the various sanctions Seaman had received while in the drug court program, including daily check-ins, community service, jail, and "jury room dumping urine." Parker testified that there were no sanctions typically used by the drug court program that Seaman had not received. She described the treatment and programming received by Seaman while in the program and noted that the only thing he had not received was residential treatment, which had not been recommended for him by his treatment provider. Copies of drug court supervision's case notes and documentation of the sanctions for previous violations received by Seaman while in the program were received into evidence, as well as a copy of the drug court program's graduated sanctions.

Parker confirmed that drug court supervision was requesting Seaman's termination from the program for having continued contact with active drug users and the assault victim, continued dishonesty, the new law violation, and the fact that Seaman had already received "every sanction." Parker confirmed that Seaman denied committing the assault, but she testified that even if the assault was not considered, drug court supervision would still be asking for Seaman's termination from the program given his other violations.

Seaman presented the testimony of his mother, who testified about her interactions with Seaman on the day of the assault, including dropping him off at work at a particular time. In his own testimony, Seaman denied using acid and mushrooms,

stating that he had sent that particular message to "sound cool" and "kind of get in relationship with this girl." He also denied committing the assault. On cross-examination, Seaman admitted that he did not tell drug court about his alcohol relapse and that the relapse was discovered due to a positive test. He also admitted lying about his contact with his child's mother, having contacted the grandmother after being told not to do so, and having contact with another drug user. Finally, Seaman admitted to deleting messages on his phone to hide the fact that he was contacting an unapproved person and to responding to a text message from the assault victim after being told not to have contact with him.

### Drug Court Termination and Sentencing in Both Cases.

On April 29, 2019, the district court entered orders terminating Seaman from the drug court program in both cases. The court found that Seaman violated drug court conditions, including stating in his text messages that he used acid and mushrooms, promoting drug use, lying to supervision, having contact with individuals that were not approved by supervision, staying at an unapproved residence, and not following the direction of supervision and the drug court judge not to have contact with the alleged assault victim. The court found that Seaman did commit the assault alleged in the violation filed by the State, but it stated that such a finding was unnecessary to its determination of whether Seaman should be terminated from the drug court program. The court noted that prior to the State's filing, Seaman had been sanctioned for numerous violations of the drug court bond and that he had failed to follow the bond conditions on numerous occasions, including being late for drug testing, missing drug tests and treatment, violating curfew, drinking, forging "AA cards," having contact with an unapproved person on several occasions, and having an unapproved person inside "sober houses." Based on all of the evidence presented, the court concluded that the appropriate sanction was termination from the drug court program.

In the first burglary case, the district court sentenced Seaman to imprisonment for 2 to 4 years for each burglary conviction; for 1 to 2 years for criminal possession of a financial transaction device, two or three devices; and for 2 to 4 years for theft by unlawful taking, $5,000 or more. In the second burglary case, the court sentenced Seaman to imprisonment for 2 to 4 years for each burglary conviction; for 2 to 4 years for theft by unlawful taking, $5,000 or more; and for 6 months to 1 year for first offense resisting arrest. The court ordered that the sentences in both cases be served consecutively (to one another, to the sentences imposed in the other case, and to any other sentence previously imposed on Seaman).

## ASSIGNMENTS OF ERROR

Seaman asserts that the district court erred in (1) terminating him from drug court participation without affording him due process of law; (2) receiving evidence at the termination hearing over valid hearsay and foundation objections, thereby denying him the right to confront and cross-examine witnesses against him; (3) finding sufficient evidence to terminate him from the drug court program; and (4) imposing excessive sentences.

## STANDARD OF REVIEW

[1,2] The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *State v. Valdez*, 305 Neb. 441, 940 N.W.2d 840 (2020).

[3,4] The State cites *State v. Johnson*, 287 Neb. 190, 842 N.W.2d 63 (2014), as support for applying an abuse of discretion standard of review for an appellate court to use when reviewing whether a trial court erred in finding sufficient evidence to terminate an individual from a drug court program.

Although *Johnson* involved a probation revocation proceeding, we agree that an abuse of discretion standard is equally applicable when reviewing termination from drug court participation. The Nebraska Supreme Court has previously applied case law applicable to parole and probation revocation proceedings in determining due process standards applicable in drug court termination proceedings. See *State v. Shambley*, 281 Neb. 317, 795 N.W.2d 884 (2011). We determine that termination from a drug court program is a matter entrusted to the discretion of the trial court. A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *State v. Ettleman*, 303 Neb. 581, 930 N.W.2d 538 (2019).

[5,6] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

*Due Process.*

Seaman asserts that the district court erred in terminating his participation in the drug court program without affording him due process of law. He argues that the hearing held in this case did not meet the minimum due process to which he was entitled as set forth in *State v. Shambley, supra*, and that thus, his procedural due process rights were violated.

[7,8] In *Shambley*, the Nebraska Supreme Court determined that drug court program participants are entitled to the same due process protections as persons facing termination of parole or probation. At a hearing to determine revocation of parole or probation, the following minimum due process protections apply: (1) written notice of the time and place of the hearing; (2) disclosure of evidence; (3) a neutral factfinding body or

person, who should not be the officer directly involved in making recommendations; (4) opportunity to be heard in person and to present witnesses and documentary evidence; (5) the right to cross-examine adverse witnesses, unless the hearing officer determines that an informant would be subjected to risk of harm if his or her identity were disclosed or unless the officer otherwise specifically finds good cause for not allowing confrontation; and (6) a written statement by the fact finder as to the evidence relied on and the reasons for revoking the conditional liberty. *Id.*

[9,10] A parole or probation revocation hearing is not a criminal prosecution, and the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial. *Id.* Despite the flexible standard for drug court program termination and parole or probation revocation hearings which allows the consideration of hearsay evidence inadmissible under the rules of evidence, absent a showing of good cause, the drug court participant, parolee, or probationer has the right to confront adverse witnesses with personal knowledge of the evidence upon which the termination or revocation is based. *Id.*

In *State v. Shambley*, 281 Neb. 317, 795 N.W.2d 884 (2011), the Nebraska Supreme Court concluded that the hearing held in that case did not comport with the minimum due process standards to which drug court participants are entitled. There, the defendant's termination from the program was based on hearsay documents—a letter from the drug court coordinator with various attachments—the foundation and reliability of which were not established. The Supreme Court found this evidence insufficient to sustain the State's burden of proof. And, the court found that the State's failure to present testimony from any witnesses, whom the defendant could then cross-examine with respect to the statements found in the documents and the recommendation to terminate her from the program, violated the defendant's right to cross-examination. The court determined that despite the flexibility to consider hearsay,

where there were no adverse witnesses and no finding of good cause to disallow cross-examination, the drug court denied the defendant that right and thus deprived her of her right to procedural due process. The court also determined that the State failed to meet its burden of proving the violations, noting that "the *sole* reliance on hearsay evidence in parole and probation hearings, especially when no findings of substantial reliability are made, is generally considered a failure of proof." *Id.* at 334, 795 N.W.2d at 897 (emphasis in original). The court stated, "No lesser standard should be applied to drug court termination proceedings." *Id.* The court observed that even though the evidentiary rules are relaxed, it is inadvisable for a court to rely solely on unsubstantiated hearsay. See *id.*

In this case, Seaman acknowledges that the State presented testimony from Parker and that he had the opportunity to cross-examine her, but he argues that his due process rights were violated because the State also "offered police reports from an unrelated matter, a criminal investigation with no resolution and in fact no charging decision at the time of the termination hearing" and because the reports were hearsay and were not offered through the testimony of the person who authored them. Brief for appellant in cases Nos. A-19-746 and A-19-747 at 9. He also argues that the district court received the police reports over his valid hearsay objections and that he had no opportunity to confront the author of the reports or the individuals who made the statements summarized in the reports. Seaman argues that the State's case relied heavily upon the unsubstantiated hearsay allegations in the police reports and the photographs of the victim of the alleged assault, evidence which he alleges was largely rebutted by his own evidence.

We disagree with Seaman's assertion that the State's case relied heavily upon police reports and photographs of the alleged assault. Regardless of whether the admission of the reports and photographs violated due process, which we need not decide, the State's case did not rely solely upon this evidence. Parker testified about multiple other violations and

indicated that even if the assault were not considered, drug court supervision would still be recommending Seaman's termination from the program.

*Evidentiary Rulings.*

Seaman asserts that the district court erred in receiving evidence at the termination hearing over valid hearsay and foundation objections, thereby denying him the right to confront and cross-examine witnesses against him. During the termination hearing, Seaman objected to the police reports on the basis of hearsay and the photographs of the victim of the alleged assault on the basis of foundation. On appeal, he argues that the court erred in receiving these exhibits over his objections despite the relaxed evidentiary rules applicable in drug court proceedings. He argues that if the State wanted to use "evidence with . . . questionable admissibility," he should have been given the right to fully cross-examine the author of the reports, the person who took the photographs, and "any other persons on whose information the violations in this case were based." Brief for appellant in cases Nos. A-19-746 and A-19-747 at 11. He argues that had his "procedural due process rights been observed," he would have successfully rebutted the State's evidence. *Id.*

Seaman's evidentiary arguments are essentially the same as his due process arguments discussed above. Assuming without deciding that the admission of these exhibits was error, we disregard these exhibits in our determination of whether the evidence was sufficient to terminate Seaman's participation in drug court.

*Sufficiency of Evidence as to*
*Drug Court Violation.*

Seaman asserts that the district court erred in finding sufficient evidence to terminate him from the drug court program.

[11,12] In drug court termination proceedings, the State bears the burden of proving, by a preponderance of the evidence, the alleged grounds for termination. *State v. Shambley*,

281 Neb. 317, 795 N.W.2d 884 (2011). A preponderance of the evidence is the equivalent of the greater weight of the evidence. See *In re Interest of Jeremy U. et al.*, 304 Neb. 734, 936 N.W.2d 733 (2020).

In each of these cases, the court entered a drug court bond which set forth numerous conditions for Seaman's participation in the drug court program. By his signature, Seaman acknowledged that he received a copy of the bond and agreed to abide by all the conditions set forth. Seaman also received a copy of the drug court program handbook, which contained detailed "Program Conditions" notifying participants that they are expected to act in accordance with the listed conditions at all times and that failure to comply with the conditions is not merely a program violation but also a violation of the participant's bonds and may result in the filing of an alleged drug court bond violation.

According to the alleged drug court violations filed by the State in these cases, Seaman violated his bond conditions of refraining from unlawful or disorderly conduct; truthfully answering inquiries of the drug court supervision office, the judge and other program personnel; residing in an approved residence; and abiding by the rules of the drug court contained in the handbook. The State's allegations were based on the alleged assault, Seaman's untruthful responses with respect to text messages on his phone and evidence on his phone showing unapproved contacts, possible drug use not tested for by the program, his residence in an unapproved location, and the deletion of information from his phone.

At the hearing, Seaman's drug court program supervisor testified about each of these violations, and in his own testimony, Seaman admitted that he did not tell the drug court about his alcohol relapse; that he lied about having contact with his child's mother, having contacted the grandmother after being told not to do so, and having contact with another drug user; that he deleted messages on his phone to hide an unapproved contact; and that he responded to a text message from the assault victim after being told not to have contact

with him. There was evidence about the sanctions Seaman had already received for violations, including being late for drug testing, missing treatment, violating curfew, drinking, having an unapproved person in "sober houses," and forging "AA cards."

Seaman focuses on the district court's findings with respect to the alleged assault, and he argues that if a portion of the court's order "could be based on so little evidence, evidence of questionable admissibility and veracity, and evidence that was rebutted, then the rest of the order should be viewed with high scrutiny." Brief for appellant in cases Nos. A-19-746 and A-19-747 at 12-13. However, the court clearly stated that its finding with respect to the commission of the assault was unnecessary to its determination of whether Seaman should be terminated from drug court, and we agree that there was sufficient evidence to terminate Seaman from the program without consideration of the alleged assault. Although the court mistakenly made its findings beyond a reasonable doubt, we find the evidence was clearly sufficient to meet the lower preponderance or greater weight standard. The district court did not err in finding sufficient evidence that Seaman violated the conditions of his drug court bond.

*Termination From Drug Court.*

Seaman argues that termination from the drug court program was not the appropriate remedy for his violation of drug court conditions and that "there are other levels of sanctions that could have been imposed by the drug court team short of termination." Brief for appellant in cases Nos. A-19-746 and A-19-747 at 14.

By signing the drug court bond, Seaman acknowledged that if it is alleged that he has violated any of the conditions, "I can be immediately remanded to the custody of the Lancaster County Department of Corrections . . . , my bond can be revoked, and/or I can be terminated from drug court and sentenced on the charges to which I entered pleas." The program handbook also notifies participants of a list of typical

sanctions contained on a graduated sanctions matrix which participants receive during intake and which are also posted in the drug court office.

The evidence presented showed that Seaman violated numerous drug court conditions contained in the bond and the handbook, took steps to conceal a violation, and continued to violate the conditions after receiving multiple sanctions. The record shows that the progressive sanctions provided in the matrix were utilized in this case. Parker testified that there were no sanctions typically used by the drug court program that Seaman had not already received. She also testified that drug court supervision would still be asking for Seaman's termination from the program even if the assault were not considered.

The district court did not abuse its discretion in finding that the State had met its burden to prove the violations or in terminating Seaman from the drug court program.

*Excessive Sentences.*

Seaman asserts that the district court abused its discretion by imposing excessive sentences. Seaman was convicted of seven Class IIA felonies (five counts of burglary and two counts of theft by unlawful taking, $5,000 or more), and the court imposed sentences of 2 to 4 years' imprisonment for each of these convictions. Class IIA felonies are punishable by a maximum of 20 years' imprisonment. There is no minimum. See, Neb. Rev. Stat. § 28-105 (Cum. Supp. 2018); § 28-507; § 28-511; § 28-518. Seaman was sentenced to 1 to 2 years' imprisonment for his conviction of criminal possession of a financial transaction device, two or three devices, a Class IV felony, and punishable by up to 2 years' imprisonment and 12 months' postrelease supervision, a $10,000 fine, or both; there is no minimum term of imprisonment, but there is a minimum of 9 months' postrelease supervision if imprisonment is imposed. § 28-105; § 28-621. However, Seaman was not subject to the postrelease supervision portion of the sentence that normally accompanies Class IV felonies, because he was also sentenced to imprisonment for Class IIA felonies. See

§ 28-105(6). Finally, the court imposed a sentence of imprisonment for 6 months to 1 year for Seaman's conviction of first offense resisting arrest, a Class I misdemeanor, punishable by up to 1 year's imprisonment, a $1,000 fine, or both. Neb. Rev. Stat. § 28-106 (Reissue 2016); § 28-904. All of the sentences imposed by the court were within the statutory limits.

[13-15] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Montoya*, 305 Neb. 581, 941 N.W.2d 474 (2020). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* However, the sentencing court is not limited to any mathematically applied set of factors. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Montoya, supra.*

At the sentencing hearing, the district court observed that Seaman needed to address the "element of criminal thinking . . . that creeps back in." The court stated that Seaman's offenses were serious, in that he broke into and stole items from private residences, where "everybody in society should feel secure," and it observed that the act of burglary, especially a residential burglary, is a serious invasion of privacy. The court stated it was imposing sentences with regard for the nature and circumstances of the crimes, as well as Seaman's history, character, and condition. A review of the level of service/case management inventory in the presentence

investigation report completed prior to sentencing shows that Seaman's overall score of 32 placed him in the "very high" risk category for recidivism.

The district court considered the appropriate factors and did not abuse its discretion in sentencing Seaman.

## CONCLUSION

The court did not abuse its discretion in finding sufficient evidence to terminate Seaman's participation in the drug court program or in sentencing Seaman.

AFFIRMED.