Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/19/2024 09:08 AM CST

State of Nebraska, appellee, v.
Tristan T. Horne, appellant.
___ N.W.2d ___

Filed January 19, 2024.    No. S-23-192.

1. **Courts: Appeal and Error.** A defendant's removal from a problem-solving court program is reviewed for an abuse of discretion.
2. **Sentences: Appeal and Error.** A sentence imposed within statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court.
3. \_\_\_\_: \_\_\_\_. An abuse of discretion takes place when the sentencing court's reasons or ruling are clearly untenable and unfairly deprive a litigant of a substantial right and a just result.
4. **Trial: Appeal and Error.** A party is normally required to object to a perceived error by a trial court in order to preserve that issue for appeal.
5. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

Appeal from the District Court for Sarpy County: Stefanie A. Martinez, Judge. Affirmed.

Christopher J. Lathrop, Deputy Sarpy County Public Defender, and Savannah Kroll, Senior Certified Law Student, for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

After pleading guilty to a charge of attempted possession of a firearm by a prohibited person, Tristan T. Horne was accepted into a problem-solving court program. On several occasions during Horne's participation in the program, the district court sanctioned Horne for his failure to comply with program requirements. Eventually, the State moved to remove Horne from the program due to additional failures to follow program requirements. Horne admitted to the alleged violations, and the district court removed Horne from the program. The district court then sentenced Horne to a term of imprisonment on the charge to which he had earlier pled guilty. Horne appeals, challenging his removal from the problem-solving court program, the fact that the district court did not order a presentence investigation before sentencing him, and the length of his sentence. We find no reversible error and therefore affirm.

## BACKGROUND

### Horne's Guilty Plea; Entry Into Wellness Court Program.

This case began when the State charged Horne with possession of a firearm by a prohibited person. The charges arose from an incident in which Horne appeared on a video holding a gun and making comments about killing himself.

Horne and the State later reached a plea agreement. Pursuant to the agreement, Horne pled guilty to an amended charge of attempted possession of a firearm by a prohibited person and the State recommended that Horne be admitted to "Wellness Court," a problem-solving court program administered by the district court. In such programs, sentencing is deferred following a guilty plea and the defendant instead participates in a program that includes treatment, supervision, and judicial oversight. See *State v. Shambley*, 281 Neb. 317, 795 N.W.2d 884 (2011). See, also, Neb. Rev. Stat. § 24-1302 (Reissue 2016) (amended by 2023 Neb. Laws, L.B. 50, effective

September 2, 2023); Neb. Ct. R. § 6-1201 et seq. (rev. 2022). After successful completion of the program, participants are often permitted to withdraw their pleas and have their charges dismissed. See *Shambley, supra*. If, however, the participant is removed from the program or withdraws before successful completion, the conviction stands and the case proceeds to sentencing on that conviction. See *id.* The district court's wellness court program is designed to assist defendants with mental health diagnoses.

The district court accepted Horne's guilty plea. It then confirmed on the record that Horne had read and reviewed with his attorney a contract governing the terms of his participation in the wellness court program. The district court also confirmed that Horne agreed to adhere to the requirements of the contract and that he understood that a failure to do so could result in removal from the program. The district court additionally advised Horne that if he was removed from the program, he could be sentenced on the charge to which he had pled guilty. The district court accepted Horne into the wellness court program and released him on a signature bond. The full contract governing Horne's participation in the wellness court program is not included in the record on appeal.

In a journal entry and order memorializing the hearing at which Horne pled guilty and was accepted into the wellness court program, the district court stated that Horne had voluntarily, knowingly, and intelligently waived his right to a presentence investigation.

*Wellness Court Program.*

Horne began participating in the wellness court program shortly after the district court accepted him into the program in April 2021. As part of the wellness court program, Horne had frequent status hearings in the district court. During those hearings, Horne reported on his weekly schedule, his progress toward certain personal goals, and his meetings with probation officers and therapists. During several of those status

hearings, the district court sanctioned Horne for violations of program requirements, including missed drug tests, missed Alcoholics Anonymous meetings, dishonesty with probation officers, and not completing community service hours ordered by the district court.

At one point during Horne's participation in the wellness court program, he admitted to "a relapse." To address the relapse, the district court ordered Horne to move into a structured living facility. When Horne failed to move into a structured living facility despite program staff notifying him of an opening, the district court ordered Horne to move into the facility or, if the space was no longer available, to report to the county jail for a 1-day jail sanction. The record indicates that Horne failed to report as ordered, and the district court ordered a jail sanction.

As a result of Horne's failure to follow directions of the district court, the district court eventually ordered Horne to remain in the county jail until a bed became available at a residential treatment facility. When a bed became available, Horne was released to the facility, but was ordered to immediately report to the county jail if he failed to successfully complete treatment. Horne left the treatment facility without successfully completing treatment and failed to report to jail. Horne later failed to appear at a status hearing, and the district court issued a warrant for his arrest. Horne was arrested and again placed in the county jail.

Horne was subsequently placed in another treatment facility and ordered to wear a GPS monitoring device at all times. After Horne was unsuccessfully discharged from this treatment facility, the State filed a motion in October 2022 seeking Horne's termination from the wellness court program. In the motion, the State alleged multiple violations of Horne's wellness court program contract. The motion alleged that Horne had failed to appear for a wellness court program hearing; that he had tested positive for marijuana while at his latest residential treatment facility, but denied using; that he had

removed his GPS monitoring device; and that he had failed to report directly to the county jail as required after his unsuccessful discharge from the treatment facility. A warrant was again issued for Horne's arrest, and he was arrested.

*Removal From Wellness Court*
*Program and Sentencing.*

At a hearing on the motion to terminate Horne from the wellness court program, Horne admitted to the allegations in the State's motion. After accepting Horne's admissions, the district court set another hearing for "disposition."

The district court began the subsequent hearing by asking Horne's counsel if there was "any legal reason why we can't proceed to disposition." Horne's counsel said there was no such reason. The district court then stated that "although a presentence investigation report was not completed," it would take judicial notice of the State's motion to remove Horne from the wellness court program and would receive as exhibits the affidavit of probable cause for Horne's initial arrest, as well as a document summarizing Horne's criminal history.

Horne's counsel, when given the opportunity to address the district court, acknowledged that Horne "attempted to participate" in the wellness court program but "did so with not a whole lot of success." He argued that Horne should be permitted to remain in the wellness court program or should be sentenced to a term of probation on the charge to which he pled.

The district court declined to allow Horne to remain in the wellness court program. On the charge to which Horne pled guilty, the district court sentenced him to 6 to 20 years' imprisonment with credit for time he had already served.

Horne timely appealed, and we moved the case to our docket.

## ASSIGNMENTS OF ERROR

Horne assigns three errors. We have paraphrased those errors as follows: the district court erred by (1) removing him

from the wellness court program, (2) sentencing him without first ordering a presentence investigation, and (3) imposing an excessive sentence.

## STANDARD OF REVIEW

[1] We have not previously addressed the standard of review that applies to a defendant's challenge to removal from a problem-solving court program. The Nebraska Court of Appeals has held that a defendant's removal from a problem-solving court program is reviewed for an abuse of discretion. See *State v. Seaman*, 28 Neb. App. 667, 947 N.W.2d 589 (2020). We agree. Deciding whether to remove a defendant from a problem-solving court program is much like deciding whether to revoke a defendant's probation or choosing a sentence within the prescribed statutory range. Each depends upon a trial court's "unique familiarity with the facts and circumstances of a case and its judgment in balancing a host of incommensurate and disparate considerations." *U.S. v. Ruiz-Terrazas*, 477 F.3d 1196, 1201 (10th Cir. 2007). We review a decision to revoke probation, and a sentence imposed within statutory limits, for abuse of discretion. See, e.g., *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023) (sentencing); *State v. Johnson*, 287 Neb. 190, 842 N.W.2d 63 (2014) (revocation of probation). We believe it appropriate to apply the same standard to a termination from a problem-solving court.

[2,3] A sentence imposed within statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id*.

## ANALYSIS

*Removal From Wellness Court Program.*

Horne argues that the district court erred by removing him from the wellness court program. Horne primarily argues

that the conduct underlying his conviction supports continued participation in the wellness court program rather than a term of incarceration. While he admits to "some struggles" with the wellness court program, he argues he has attempted to fulfill its requirements and the district court should have allowed him to remain in the program. Brief for appellant at 21.

Saying that Horne's had "some struggles" in the wellness court program is an understatement. As detailed above, Horne violated requirements of the wellness court repeatedly. He missed drug tests; he was dishonest with probation officers; he failed to complete ordered community service; he missed Alcoholics Anonymous meetings; he did not report to a structured living facility as ordered; he spent time in the county jail as a result of sanctions; he failed to successfully complete multiple residential treatment programs; he failed to report to jail as ordered after leaving a treatment program; he tested positive for marijuana, and then he denied using while at a residential treatment program; he removed his court-ordered GPS monitoring device. On several occasions, the district court reminded Horne of the need to follow the program's requirements. Furthermore, the district court made clear to Horne when he entered the program that he could be removed from the program if he failed to comply with the program's requirements.

Horne's argument in this case appears to be that he deserves one more chance to comply with the requirements of the wellness court program. In particular, he points to a residential treatment program he has not yet entered and argues he should be allowed to remain in the wellness court program and be placed there. We must keep in mind, however, our abuse of discretion standard of review. A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Ramirez*, 314 Neb. 419, 990 N.W.2d 550 (2023). In applying that standard of review here, we

are particularly hesitant to second-guess the district court's decision to remove Horne from the wellness court program, in light of the substantial firsthand knowledge of Horne it had through his participation in the program. Given Horne's multiple failures to comply with the requirements of the wellness court program and the district court's familiarity with Horne, we cannot say the district court's decision in this case concluding "enough was enough" was untenable. We thus conclude the district court did not abuse its discretion by removing Horne from the wellness court program.

*Lack of Presentence Investigation Report.*

Horne next argues that the district court erred by imposing a sentence without first ordering a presentence investigation. He argues such an investigation was required by Neb. Rev. Stat. § 29-2261(1) (Cum. Supp. 2022). That subsection provides, in relevant part, as follows:

> Unless it is impractical to do so, when an offender has been convicted of a felony other than murder in the first degree, the court shall not impose sentence without first ordering a presentence investigation of the offender and according due consideration to a written report of such investigation.

Horne argues that decisions of this court have established that it is mandatory for a district court to consider a presentence investigation report in sentencing unless such an investigation would be impractical or the record demonstrates the defendant made a knowing and intelligent waiver of a presentence investigation. Horne claims that an investigation would not have been impractical here and that the record does not show that he knowingly and intelligently waived a presentence investigation. The State counters by arguing that, under the circumstances, an investigation was impractical and that Horne knowingly and intelligently waived his right to an investigation.

[4] Before turning to the parties' arguments, we address another issue: the fact that Horne made no objection to the

sentence being imposed without a presentence investigation, even after the district court announced on the record that "a presentence investigation report was not completed." Generally speaking, we will not review an issue for prejudicial error if the party fails to make a timely objection in the court below. See *State v. Childs*, 309 Neb. 427, 960 N.W.2d 585 (2021). Under most circumstances, we require a party to object to a perceived error by a trial court in order to preserve that issue for appeal. *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016). As we have occasionally articulated the principle, "[o]ne cannot silently tolerate error, gamble on a favorable result, and then complain that one guessed wrong." *In re Interest of Samantha L.*, 286 Neb. 778, 787, 839 N.W.2d 265, 272 (2013). See, also, *State v. Kruse*, 303 Neb. 799, 808, 931 N.W.2d 148, 155 (2019) ("[a]s a general rule, an appellate court will not consider an argument or theory that is raised for the first time on appeal"). Usually, when a party fails to object to an alleged error by the trial court, we will, at most, review the issue for plain error. See *McSwine, supra*. See, also, *State v. Roth*, 311 Neb. 1007, 1014, 977 N.W.2d 221, 228 (2022) ("[c]onsideration of plain error occurs at the discretion of an appellate court").

Our rule limiting appellate review when an issue was not brought to the attention of the trial court serves important purposes. As the U.S. Supreme Court has explained, rules circumscribing review in the absence of a trial court objection "encourage all trial participants to seek a fair and accurate [proceeding] the first time around." *United States v. Young*, 470 U.S. 1, 15, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) (internal quotation marks omitted). Put another way, rules limiting appellate review in the absence of a trial court objection incentivize trial court objections "so that any errors can be corrected before their full impact is realized." *State v. Pearson*, 775 N.W.2d 155, 161 (Minn. 2009). At the same time, appellate courts' limited discretion to recognize plain error even in the absence of a lower court objection serves

as a backstop to potential injustice. See *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S. Ct. 719, 85 L. Ed. 1037 (1941) ("[a] rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with . . . rules of fundamental justice").

Horne cannot dispute that it would be consistent with our rules regarding trial court objections, as well as the purposes those rules serve, to limit our review on this assignment of error to whether the district court plainly erred by not ordering a presentence investigation. We anticipate, however, that Horne would contend that precedent in prior cases involving § 29-2261(1) establishes that we should not limit our review in this manner. As we will explain, we disagree.

In a line of prior cases, this court has explored whether and under what circumstances a defendant can waive an argument that a trial court erred by not completing a presentence investigation contemplated by § 29-2261(1). That line of cases begins with *State v. Hiross*, 211 Neb. 319, 318 N.W.2d 291 (1982). In that case, the trial court informed the defendant that it was willing to order a presentence investigation in a misdemeanor case, but the defendant's counsel advised the court that the defendant did not want a presentence investigation and desired to waive the trial court's offer to obtain one. When the defendant subsequently argued on appeal that the trial court erred by not ordering a presentence investigation, this court concluded that the defendant had "waived the court's offer" of a presentence investigation and was thus "not now in a position to claim error." *Id.* at 320, 318 N.W.2d at 292.

A few years later in *State v. Tolbert*, 223 Neb. 794, 394 N.W.2d 288 (1986), both the defendant and her counsel informed the trial court that they wished to waive the presentence investigation. After the trial court imposed a sentence without completing a presentence investigation, however, the defendant argued on appeal that the trial court erred by

not ordering a presentence investigation. Although this court ultimately held that the trial court was not required to order a presentence investigation because doing so would have been impractical, we, citing *Hiross, supra*, also noted that a defendant can waive an objection to a trial court's decision not to order a presentence investigation.

Over two decades later in *State v. Qualls*, 284 Neb. 929, 824 N.W.2d 362 (2012), we were confronted with yet another case in which the defendant informed the trial court that he desired to waive a presentence investigation and the trial court proceeded to impose a sentence without ordering one. In *Qualls*, the defendant later argued on appeal that the trial court erred by failing to adequately advise him that he was entitled to have a presentence investigation completed and for the trial court to consider the report of that investigation in crafting a sentence. In our opinion, we noted that § 29-2261(1) generally makes presentence investigations mandatory in felony cases, but citing *Tolbert, supra*, we noted that we had held that a defendant can waive a presentence investigation. We observed that while we had held that an otherwise mandatory presentence investigation can be waived, we had not previously addressed how such a waiver could be effectuated. Relying on general propositions regarding waiver and the standards by which defendants may waive constitutional rights to counsel and to be present at trial, we ultimately held that a defendant can waive a presentence investigation under § 29-2261(1) if "it is apparent from the record that the defendant's relinquishment of the right was knowingly and intelligently made." *Qualls*, 284 Neb. at 933, 824 N.W.2d at 365. We later applied this standard to find that a defendant waived a presentence investigation in *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020).

We do not understand the line of cases we have just discussed as exempting defendants who raise an argument based on § 29-2261(1) from our usual rule requiring a timely objection in the trial court to preserve an issue for full

appellate review. Those cases addressed whether and how a defendant can effectuate a *waiver* of a presentence investigation. But our rule limiting review without a timely objection in the trial court is not, strictly speaking, a waiver rule, but, rather, a rule of *forfeiture*.

As the U.S. Supreme Court has explained, "[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment . . . of a known right." *United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) (internal quotation marks omitted). See, also, *Freytag v. Commissioner*, 501 U.S. 868, 894 n.2, 111 S. Ct. 2631, 115 L. Ed. 2d 764 (1991) (Scalia, J., concurring) (observing that waiver and forfeiture are "really not the same"); *U.S. v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000) ("[w]here waiver is accomplished by intent, forfeiture comes about through neglect"). We acknowledge that this court, like many others, has not always used these terms precisely. Compare, e.g., *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011) (discussing cases in which failures to assert objections were found to waive objections), with *State v. Kennedy*, 224 Neb. 164, 170, 396 N.W.2d 722, 726 (1986) ("[a] waiver is the voluntary and intentional relinquishment of a known right, privilege, or claim"). See, also, *Hamer v. Neighborhood Housing Servs. of Chicago*, 583 U.S. 17, 20 n.1, 138 S. Ct. 13, 199 L. Ed. 2d 249 (2017) ("[t]he terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous"); *Freytag, supra* (Scalia, J., concurring); *U.S. v. Noble*, 762 F.3d 509, 528 (6th Cir. 2014) (noting that courts have used the terms "rather loosely"). Despite occasional linguistic imprecision in discussing waiver and forfeiture, there are meaningful distinctions between the concepts. See *Noble*, 762 F.3d at 528 (waiver and forfeiture have "different meanings and difference consequences").

One of the ways in which the distinction between waiver and forfeiture is meaningful is that when a party truly and

effectively waives a right, there can be no error in failing to honor that right and no appellate review is available. See *Olano*, 507 U.S. at 733 ("[b]ecause the right to trial is waivable, and because the defendant who enters a valid guilty plea waives that right, his conviction without a trial is not 'error'"); *Staples*, 202 F.3d at 995 ("[w]aiver extinguishes the error and precludes appellate review"). The same is not necessarily true for forfeiture. In Nebraska, as in the federal system, a party can forfeit an argument by failing to timely assert it, yet there is still the possibility that a court could find that the trial court committed error on plain error review. See, *Olano, supra*; *State v. Roth*, 311 Neb. 1007, 977 N.W.2d 221 (2022). Thus, by addressing waiver in *State v. Qualls*, 284 Neb. 929, 824 N.W.2d 362 (2021), we were determining what a defendant must do to completely give up any right to contend on appeal that the trial court erred by not ordering a presentence investigation. We did not address in *Qualls* how a defendant might, by failing to object to the lack of a presentence investigation, forfeit the right to full appellate review of that issue.

We are aware that some rights (such as the constitutional rights to counsel and trial by jury) can be waived, but cannot be given up through mere forfeiture. See *Freytag v. Commissioner*, 501 U.S. 868, 111 S. Ct. 2631, 115 L. Ed. 2d 764 (1991) (Scalia, J., concurring). See, also, *Olano*, 507 U.S. at 733 (explaining that whether right is waivable and how right can be waived "depend on the right at stake"); *State v. Coffee*, 389 Wis. 627, 643, 937 N.W.2d 579, 586 (2020) ("[s]ome rights are so fundamental that they are not subject to [forfeiture]"). Many other rights, however, including many of constitutional origin, are subject to forfeiture if not timely asserted. See, *Freytag, supra* (Scalia, J., concurring); *Collins, supra*. Although we do not mean to diminish the importance of a trial court's consideration of information available through a presentence investigation, we are not persuaded that the mandate of § 29-2261(1) is comparable to the constitutional

rights to counsel or trial by jury, such that a party cannot forfeit objections based on § 29-2261(1) if not timely asserted in the trial court. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 237, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973) ("[a]lmost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial").

[5] Having determined to limit our review to plain error, we turn to whether plain error should be found here. We have said that plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016). We have additionally observed that plain error "is not a vehicle that should be routinely used to 'save' an issue for appeal where a proper objection should have been, but was not, made at trial." *Id.* at 583, 873 N.W.2d at 418.

Even assuming for the sake of argument that Horne could show that it is plainly evident from the record that the district court should have ordered a presentence investigation, we decline to find plain error here. We initially note that there is some indication in the record that Horne did, in fact, waive a presentence investigation. As mentioned above, the district court stated in a journal entry made at the time of Horne's plea that he had voluntarily, knowingly, and intelligently waived his right to a presentence investigation. And although the verbatim transcript of the plea hearing does not include any discussion of a presentence investigation, at oral argument, Horne's counsel acknowledged the possibility that a waiver of a presentence investigation was a standard term in the wellness court program contract that Horne signed but is not a part of the record on appeal.

More importantly, this is not a case in which the district court lacked critical information about a defendant at sentencing. As part of the wellness court program, the district court had the opportunity to observe Horne and regularly communicate with him about subjects such as his family, his employment, and his treatment from his entry in the program in April 2021 until the State filed its motion to remove him from the program in January 2023. Furthermore, if there was additional information that Horne felt was relevant to the district court's sentencing decision, we see no reason why Horne could not have offered that information prior to sentencing. Under these circumstances, we cannot say that it would result in damage to the integrity, reputation, and fairness of the judicial process if we allowed Horne's sentence to stand despite the lack of a presentence investigation. See *McSwine, supra*.

*Excessive Sentence.*

Horne's final argument is that the district court imposed an excessive sentence. He does not dispute that his sentence was within statutory limits, but asserts that the district court nonetheless abused its discretion in fashioning a sentence.

We have on numerous occasions set forth the various factors that a sentencing judge is to consider. See, e.g., *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022). Horne argues that in his case, those factors weighed in favor of a sentence of probation rather than incarceration if Horne was not allowed to continue in the wellness court program. Mindful that it is not our function to conduct a de novo review of the record to determine what sentence we would impose, see *State v. Pauly*, 311 Neb. 418, 972 N.W.2d 907 (2022), we find that the district court did not abuse its discretion in sentencing Horne.

## CONCLUSION

Because we find no reversible error on the part of the district court, we affirm.

Affirmed.