Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/17/2025 09:15 AM CST

State of Nebraska, appellee, v.
Karsen H. Rezac, appellant.
___ N.W.3d ___

Filed January 17, 2025.    No. S-24-281.

1. **Criminal Law: Motions for Continuance: Appeal and Error.** A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.

2. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

3. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

4. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

5. **Motions for Continuance: Appeal and Error.** A court does not abuse its discretion in denying a continuance unless it clearly appears that the party seeking the continuance suffered prejudice because of that denial.

6. **Criminal Law: Motions for Continuance: Appeal and Error.** Where the criminal defendant's motion for continuance is based upon the occurrence or nonoccurrence of events within the defendant's own control, denial of such motion is no abuse of discretion.

7. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court

must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed.

8. **Sentences.** In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

9. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

10. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

11. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

12. ____: ____: ____. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

13. **Effectiveness of Counsel.** Counsel's performance is deficient when it objectively does not equal that of a lawyer with ordinary training and skill in criminal law in the area.

14. **Confessions.** Intoxication is not conclusive on the issue of the voluntariness of a statement.

15. **Confessions: Miranda Rights: Waiver.** When considering whether intoxication rendered a waiver of *Miranda* rights involuntary, the defendant must be so intoxicated that he or she is unable to understand the meaning of his or her statements. If the trial judge is satisfied that under the totality of the circumstances, the defendant was able to reason, comprehend, or resist, the statements are to be admitted.

16. **Effectiveness of Counsel.** As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument.

17. **Self-Defense.** To successfully assert the claim of self-defense, a defendant must have a reasonable and good faith belief in the necessity of

using force and the force used in defense must be immediately necessary and justified under the circumstances.

Appeal from the District Court for Lancaster County, Lori A. Maret, Judge. Affirmed.

Matthew K. Kosmicki, of Kosmicki Law, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, Eric J. Hamilton, and Lincoln J. Korell for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, and Freudenberg, JJ.

Funke, C.J.

## I. INTRODUCTION

In this direct appeal, Karsen H. Rezac challenges his conviction and sentence for second degree murder. Rezac argues that the district court for Lancaster County, Nebraska, abused its discretion by declining to continue his sentencing hearing so that his mental health records could be reviewed and submitted to the court. Rezac also argues that the court abused its discretion by failing to adequately consider various mitigating factors when sentencing him. In addition, Rezac argues that his trial counsel was ineffective in multiple regards. We find the record insufficient to address two of Rezac's claims of ineffective assistance of counsel. Otherwise, finding no merit to Rezac's arguments, we affirm his conviction and sentence.

## II. BACKGROUND

The following paragraphs briefly describe the underlying facts, as well as the proceedings below. Where relevant, other information is discussed later in the opinion.

### 1. Factual Background

Early on December 23, 2022, two vehicles collided near the intersection of 20th and Washington Streets in Lincoln,

Nebraska. Audible gunshots followed. Police officers responding to the scene found Kupo Mleya in the driver's seat of a sport utility vehicle. Mleya had suffered "gunshot wounds" and died from his injuries. Mleya's vehicle had damage consistent with a collision; there were "numerous bullet holes" in the driver's door, and the driver's window was shattered.

Based on vehicle debris in the area and witness reports, Rezac was identified as a suspect. Rezac lived nearby and had a sport utility vehicle whose color and type matched the debris at the scene. Rezac's vehicle was located several blocks away. Damage on the vehicle's passenger side was consistent with the debris at the scene, and the rear passenger window had damage consistent with gunshots being fired through it. Shell casings were visible inside the vehicle. A subsequent search of the vehicle located a 9-mm handgun and nine fired 9-mm casings.

On December 24, 2022, Rezac was taken into custody for an interview. Rezac waived his *Miranda* rights and agreed to make a statement. Rezac stated that while backing out of his driveway, he collided with another vehicle. Rezac said that he then "'freaked out'" and fired approximately six shots toward the other vehicle before fleeing the scene. Rezac stated that he did not know the other driver.

Rezac was charged with second degree murder and use of a firearm to commit a felony. However, pursuant to a plea agreement, Rezac subsequently pled no contest to second degree murder and the State dropped the use of a firearm charge and agreed not to file additional charges against Rezac based on this investigation. Sentencing was deferred until March 27, 2024, pending the preparation of a presentence investigation report.

## 2. Motion to Continue Sentencing

The presentence investigation report became available for counsel to review on March 21, 2024. The next day, Rezac's counsel moved to continue sentencing because probation had

not completed the report "in a timely manner" and had "failed to gather material documents, including historical records of mental health care" provided to Rezac. Rezac's counsel argued that in the 2 business days before trial, he did not have sufficient time to review the report with Rezac or compile and present to the court the information that the court would need to determine an appropriate sentence. Rezac's counsel also suggested that the court would not have time to review the information.

The State objected to the motion to continue and argued that rescheduling the sentencing would cause unnecessary expense and inconvenience to Mleya's "nearest surviving relatives," who were coming from South Africa, Zimbabwe, Japan, and Texas and had already arranged to be in Lincoln for sentencing on March 27, 2024.

The court heard arguments that same day. At the hearing, Rezac's counsel argued that Rezac returned his completed forms to probation on or around February 18, 2024, but that probation did not interview Rezac until March 19. Counsel also argued that the "bulk" of the presentence investigation report was "police reports"; there were "zero mental health records." As such, counsel claimed that the defense needed more time to figure out, among other things, "what in the hundreds of pages of mental health care records" available to the defense would need to be provided to the court. Counsel also stated that he wanted to "make sure [the] Court ha[d] enough time to review everything that's presented to it." Counsel maintained that the presentence investigation report should have been made available more than 6 calendar days before sentencing in a second degree murder case and that the State should have provided certain mental health records in its possession.

The State presented testimony from the probation officer who completed the presentence investigation report. The probation officer testified that all such reports are "upload[ed] five business days prior to the sentencing date," regardless

of the type of case. The probation officer also testified that Rezac never provided any mental health records for inclusion or directed her to look at specific records. However, the probation officer admitted that during Rezac's interview, he told her a specific provider had previously treated him for suicidal ideation, that she did not have a release of information form for that provider at the time of the interview, and that she "forg[o]t or fail[ed] to go back and have . . . Rezac sign that release" so she could request those records. The probation officer indicated that she was willing to do so following the hearing. Otherwise, the probation officer testified that while Rezac indicated he "had done counseling in the past," he did not indicate where, so she could not obtain those records.

The State then argued that there was "ample time" to review any records. The State observed that the discovery materials it provided to Rezac would have included "any medical or any psychological reports" it had and that Rezac "had those for a length of time." The State similarly observed that Rezac previously identified a psychologist as a potential witness and that thus, the contents of the missing records "shouldn't come as any surprise."

The district court agreed with the State. The court stated that "seasoned counsel," like those here, should know that if defense counsel wants information included in the presentence investigation report, counsel needs to provide that information to probation. "[I]t's not up to the County Attorney to delve into the life of . . . Rezac if he can provide that himself and if he wants the Court to know about it." Further, the court stated that it never received presentence investigation reports more than 5 to 7 days prior to sentencing, regardless of the charge. The court indicated that it ordered a presentence investigation report for its own purposes, that it received the report, and that it "ha[d] what it needs and . . . the time it needs in order to do its job." As such, the court denied Rezac's motion to continue sentencing.

### 3. Sentencing Hearing

The sentencing hearing was held as scheduled on March 27, 2024. At the hearing, the court indicated that it had reviewed and considered the presentence investigation report, as well as several supplemental items dated March 22, 25, and 26, 2024. The records from the provider who had treated Rezac for suicidal ideation were not among the supplemental items. However, there was a letter from Rezac's counsel asking the court to take into account various mitigating factors, including Rezac's "intense mental health issues during the weeks prior to [the] shooting."

Exercising his right to allocution, Rezac apologized to Mleya's family and took "full responsibility" for the shooting. Rezac recognized a need to address "[his] demons," rather than "suppress them with substance abuse." Rezac also observed that the "company [he] kept enabled [him] to make unfavorable decisions." Rezac stated that he was "aware of the time [in prison] that [he was] facing" and planned to use it for "self-improvement."

The court then stated that it had reviewed "a lot of information" regarding Rezac, including his "mental health information," but that it was at a loss as to why the shooting occurred. The court observed:

> There are lots of people who have grown up in families where their parents are divorced. There's lots of people who've grown up with mental illnesses, diagnoses of depression and anxiety. There are lots of people who've suffered losses in their lives of loved ones. And there are lots of people who, frankly, didn't have access to the resources that [Rezac] had throughout [his] life. . . .
>
> . . . .
>
> [He] had access to the resources and the medications . . . and the treatment for [his] mental illness. But yet [he] still used marijuana and cocaine and other substances . . . . And that just made [his] bad situation worse.

The court reasoned that insofar as the help Rezac received had not kept the community safe from harm, "the safest place for the community [was] with [Rezac] not in it." Accordingly, the court found that based on the nature and circumstances of the crime and Rezac's history, character, and condition, imprisonment was necessary for the protection of the public because there was a substantial risk that Rezac would engage in additional criminal conduct during any period of probation and because a lesser sentence would depreciate the seriousness of the crime and promote disrespect for the law. The court sentenced Rezac to imprisonment for a term of 60 years to life.

Rezac appeals his conviction and sentence.

### III. ASSIGNMENTS OF ERROR

Rezac assigns, restated, that the district court abused its discretion in denying his request to continue sentencing and by imposing an excessive sentence. Rezac also assigns that his trial counsel was ineffective in multiple regards, as set forth below.

### IV. STANDARD OF REVIEW

[1-3] A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.[1] An appellate court will also not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[2] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[3]

---

[1] *State v. Turner*, 315 Neb. 661, 998 N.W.2d 783 (2024).

[2] *State v. Barnes*, 317 Neb. 517, 10 N.W.3d 716 (2024).

[3] *State v. Haas*, 317 Neb. 919, 12 N.W.3d 787 (2024).

[4] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.[4] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[5]

## V. ANALYSIS

### 1. Denial of Motion to Continue Sentencing

Rezac argues that the district court abused its discretion in declining to continue sentencing so that "[his] counsel could gather mental health records and provide them to . . . probation" for inclusion in the presentence investigation report.[6] Rezac points to his trial counsel's statement that counsel needed more time to "review . . . the enormous amount of mental health records he had" and determine what was relevant, among other things.[7] Rezac also argues that because the district court did not have his mental health records, the court "could not have considered all of the relevant factors," as discussed below, when sentencing him.[8] The State counters that Rezac waived this argument and that the argument is otherwise without merit.

We agree with the State that Rezac forfeited "his right to argue that the lack of records prejudiced him."[9] As we recently explained in *State v. Horne*,[10] although the terms are

---

[4] See *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024).

[5] *Id*.

[6] Brief for appellant at 18.

[7] *Id*. at 20.

[8] *Id*. at 21.

[9] Brief for appellee at 18.

[10] *State v. Horne*, 315 Neb. 766, 777, 1 N.W.3d 457, 465 (2024).

sometimes used interchangeably, "'[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment . . . of a known right.'" The defendant in *Horne* argued, among other things, that the district court erred in sentencing him without first ordering a presentence investigation.[11] We rejected that argument.[12] In so doing, we explained that "some rights (such as the constitutional rights to counsel and trial by jury) can be waived, but cannot be given up through mere forfeiture. . . . Many other rights, however, including many of constitutional origin, are subject to forfeiture if not timely asserted."[13]

In *Horne*, we concluded that the statute requiring presentence investigation reports in certain cases was not "comparable to the constitutional rights to counsel or trial by jury, such that a party cannot forfeit objections based on [the statute] if not timely asserted in the trial court."[14] We also found some indication that the defendant in that case actually waived the presentence investigation.[15] "More importantly," we found that "this [was] not a case in which the district court lacked critical information about a defendant at sentencing."[16]

Although *Horne* involved the failure to complete a presentence investigation report and not just the absence of certain information from such a report, it makes clear that Rezac forfeited his argument here. At the sentencing hearing, the court asked Rezac's counsel whether he had "had an opportunity to review all of [the presentence] information" and whether counsel had "[a]ny additions or corrections that need[ed]

---

[11] *Id.*

[12] See *id.*

[13] *Id.* at 778, 1 N.W.3d at 466.

[14] *Id.* at 778-79, 1 N.W.3d at 466. See Neb. Rev. Stat. § 29-2261(1) (Cum. Supp. 2022).

[15] See *Horne, supra* note 10.

[16] *Id.* at 780, 1 N.W.3d at 467.

to be made." Counsel responded that he had the opportunity to review the report and supplemental items and then proceeded to make certain corrections to the report without raising the lack of mental health records. Rezac was present and remained silent when trial counsel made this statement. Rezac then exercised his right of allocution, without mentioning the missing mental health records or the allegedly mitigating information contained in them. Thereafter, when asked if there was any legal reason why sentence should not be imposed, Rezac's counsel said, "No." We have previously found that a defendant had given up the right to a presentence investigation report under similar circumstances.[17]

However, even if Rezac's argument were not seen to have been forfeited, it would still fail under our precedents.

[5,6] As we have previously stated, a court does not abuse its discretion in denying a continuance unless it clearly appears that the party seeking the continuance suffered prejudice because of that denial.[18] Also, where the criminal defendant's motion for continuance is based upon the occurrence or non-occurrence of events within the defendant's own control, denial of such motion is no abuse of discretion.[19]

In his arguments on appeal, Rezac variously references his mental health history and his mental health records. However, insofar as his concern is with his mental health history generally, Rezac cannot be seen to have been prejudiced by the denial of the continuance. Rezac claims that his "mental health history . . . would have shown that it has been documented that he has several mental health conditions."[20] However, Rezac's mental health history, including the specific conditions that Rezac notes, were all discussed in the presentence

---

[17] See *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020).

[18] *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017).

[19] *Id*.

[20] Brief for appellant at 21.

investigation report.[21] The report and supplemental items also reflected Rezac's view that his mental health was "spiraling out of control" at the time of the shooting.[22]

It is true that the presentence investigation report did not include Rezac's mental health records and, in particular, the records of the provider who had treated him for suicidal ideation in 2016. However, we reject Rezac's claim that the lack of these records was not within his control. Rezac faults probation for both the delay in making the presentence investigation report available and the "failure . . . to gather any mental health records."[23] We take a different view. The record shows that there was no delay in making the presentence investigation report available in this case; instead, the report was made available at the time when such reports are generally made available. The record also shows that Rezac failed to provide probation—or the trial court—with any mental health records, despite having such records available to him.

An "Insanity Evaluation" of Rezac completed on September 29, 2023, was based, in part, on a review of materials from six different mental health care providers, including the provider who had treated Rezac for suicidal ideation. On or about March 24, 2024, a "Sentencing Report" was prepared by a mitigation specialist working with Rezac's counsel. The report was similarly based on records from six different providers, including the "[c]omplete [f]ile" of the provider who had treated Rezac for suicidal ideation. These documents show that Rezac clearly had the records from at least those six

---

[21] See, e.g., *Baxter, supra* note 18 (finding no prejudice in denial of continuance so that defendant could obtain drug and alcohol evaluation where presentence investigation report included ample information about defendant's substance abuse issues). See, also, *Horne, supra* note 10 (district court not lacking information about defendant at sentencing).

[22] Brief of appellant at 17.

[23] *Id*. at 22.

providers. However, Rezac failed to provide those records to probation or the court.[24]

As to Rezac's argument that other records, such as his school records, should also have been provided to the court, we observe that the presentence investigation report already included his childhood diagnosis of attention deficit hyperactivity disorder, his difficulties following his parents' divorce, and his having been bullied. Beyond those facts, Rezac "does not specify what information is lacking or how it might have affected the court's sentencing decision."[25]

## 2. Sentence of Imprisonment for Term of 60 Years to Life

Rezac also argues that the district court abused its discretion in sentencing him to imprisonment for a term of 60 years to life. Rezac does not dispute that his sentence was within the statutory limits. However, Rezac maintains that his sentence was excessive because the district court "failed to adequately consider" or "ignored" mitigating factors, including his age, health, life circumstances, rehabilitative needs, and willingness to plead no contest.[26] The State, on the other hand, argues that there was no abuse of discretion here.

[7,8] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed.[27] In determining a sentence to be imposed, relevant

---

[24] See, e.g., *Horne, supra* note 10, 315 Neb. at 780, 1 N.W.3d at 467 ("if there was additional information that [the defendant] felt was relevant to the district court's sentencing decision, we see no reason why [the defendant] could not have offered that information prior to sentencing"); *Baxter, supra* note 18 (similar).

[25] See *Baxter, supra* note 18, 295 Neb. at 500, 888 N.W.2d at 731.

[26] Brief for appellant at 24, 26.

[27] *Barnes, supra* note 2.

factors customarily considered and applied are the defendant's
(1) age, (2) mentality, (3) education and experience, (4) social
and cultural background, (5) past criminal record or record of
law-abiding conduct, and (6) motivation for the offense, as
well as (7) the nature of the offense and (8) the amount of vio-
lence involved in the commission of the crime.[28]

[9] The appropriateness of a sentence is necessarily a sub-
jective judgment and includes the sentencing judge's observa-
tion of the defendant's demeanor and attitude and all the facts
and circumstances surrounding the defendant's life.[29]

There is nothing in the record that indicates the district
court failed to consider the relevant mitigating factors. The
record shows that the court considered the presentence inves-
tigation report and the supplemental items. Those materials
addressed the various mitigating factors noted by Rezac. In its
comments at sentencing, the court even highlighted several of
those mitigating factors, including Rezac's parents' divorce,
his childhood mental health issues, his depression and anxiety,
and the death of his grandmother. However, the court also
considered other factors, such as the nature and circumstances
of the crime, the myriad "resources" that had been available
to Rezac in dealing with his mental health issues, and Rezac's
resort to illegal drugs. Ultimately, the court determined that
"[no] amount of help" would keep the community "safe from
[Rezac]" and that a relatively lengthy sentence of imprison-
ment was instead warranted.

Rezac's real concern appears to be the conclusion reached
by the court based upon its consideration of the mitigating
factors, and not the failure to consider these factors per se.
However, we decline Rezac's invitation to substitute our judg-
ment of an appropriate sentence for that of the district court.
That is not our role; "it is not our function to conduct a de

---

[28] *Id.*

[29] *Id.*

novo review of the record to determine what sentence we would impose."[30]

As to Rezac's willingness to plead no contest, in particular, we have long held the view that while a more severe punishment cannot be exacted because a defendant pleads not guilty and puts the State to the expense of a trial, a defendant nonetheless has no absolute right to a reduced sentence because he saves the State the expense of going to trial.[31] We do not understand *State v. Lotter*[32] to mark a change in this view. In *Lotter*, we did opine that "it is proper for a trial court to grant sentence concessions to defendants who plead guilty when the interest of the public in the effective administration of criminal justice would be served."[33] However, immediately after that statement, we clarified that "[s]uch concessions should originate with the parties."[34] Here, the plea agreement merely provided for dismissal of the use of a firearm charge and offered no sentencing concessions.

### 3. ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

Rezac also argues, restated, that his trial counsel was ineffective under the test in *Strickland v. Washington*[35] in (1) failing to move to suppress Rezac's statement to law enforcement, (2) failing to "fully explain" the penalties for second degree murder, (3) advising Rezac that he could not "present a self-defense argument," (4) "failing to explain and advise" about the difference between second degree murder and involuntary

---

[30] *Horne, supra* note 10, 315 Neb. at 780, 1 N.W.3d at 467.

[31] *State v. Suffredini*, 224 Neb. 220, 397 N.W.2d 51 (1986). See, also, *State v. Moore*, 4 Neb. App. 564, 547 N.W.2d 159 (1996).

[32] *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified on denial of rehearing* 255 Neb. 889, 587 N.W.2d 673 (1999).

[33] *Id*. at 476, 586 N.W.2d at 611.

[34] *Id*.

[35] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

manslaughter, and (5) failing to provide Rezac's mental health records to probation or the court.

[10] On direct appeal, Rezac has new counsel who was not his trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.[36]

[11-13] However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved.[37] The determining factor is whether the record is sufficient to adequately review the question.[38] The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.[39] Counsel's performance is deficient when it objectively does not equal that of a lawyer with ordinary training and skill in criminal law in the area.[40]

### (a) Not Moving to Suppress Statement to Law Enforcement

As was noted above, Rezac waived his *Miranda* rights and made a statement to law enforcement. However, on appeal, Rezac argues that his statement was not voluntary because he had ingested illegal drugs and "was 'high'" at the time of the interview.[41] Rezac claims that when he informed his trial counsel of this, counsel failed to investigate his claim, failed

---

[36] *Haas, supra* note 3.

[37] *Id*.

[38] *Id*.

[39] *State v. Zitterkopf*, 317 Neb. 312, 9 N.W.3d 896 (2024).

[40] *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022).

[41] Brief for appellant at 31.

to advise him that intoxication may invalidate a *Miranda* waiver, and failed to move to suppress his statement. Rezac claims that he was prejudiced by this deficient performance because, absent his statement, there was "no concrete evidence placing [him] at the scene as the shooter that killed [Mleya]."[42] The State counters that under our precedents regarding intoxication, trial counsel's performance was not deficient.

[14,15] As we have stated, intoxication is not conclusive on the issue of the voluntariness of a statement.[43] Rather, when considering whether intoxication rendered a waiver of *Miranda* rights involuntary, the defendant must be so intoxicated that he or she is unable to understand the meaning of his or her statements.[44] If the trial judge is satisfied that under the totality of the circumstances, the defendant was able to reason, comprehend, or resist, the statements are to be admitted.[45]

Based on the record before us, trial counsel cannot be said to have been deficient in failing to move to suppress Rezac's statement based on intoxication. Rezac relies on his statements to law enforcement that he smoked marijuana before the shooting, ingested cocaine before and after the shooting, and was taking prescribed medications for his mental health. Rezac claims that from these statements, it is "clear" that he "likely was under [the] influence" at the time of the interrogation.[46] However, the test stated above requires more than merely being under the influence. Instead, one must be so intoxicated that he or she is unable to understand the meaning of his or her statements.

We see no sign of that here. In the recording of Rezac's interview with police, he appeared to be able to reason and

---

[42] *Id*. at 32.

[43] *State v. Williams*, 269 Neb. 917, 697 N.W.2d 273 (2005).

[44] *Id*.

[45] *Id*. See, also, *State v. Melton*, 239 Neb. 790, 478 N.W.2d 341 (1992); *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983).

[46] Brief for appellant at 31.

comprehend the questions, and he answered coherently. Rezac did not give any indication that he did not understand his rights or the questions asked of him. Rezac audibly cried during the interview, including upon hearing that Mleya had died. Rezac can also be heard prior to the interview telling himself, "Damn Karsen, this is how you want to live your life." However, we do not view these reactions to be the product of or indicative of intoxication, but, rather, as understandable responses to the circumstances in which Rezac found himself.

[16] Because the record shows that Rezac was able to reason, comprehend, or resist at the time of the interview, a motion to suppress based on intoxication would have been meritless. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument.[47]

### (b) Not Explaining Penalties for Second Degree Murder

Rezac also argues that his trial counsel was ineffective for failing to "fully explain" the penalties for second degree murder.[48] Specifically, Rezac claims that trial counsel failed to advise him that "the minimum portion of the sentence could be more than twenty years" and that "'life' meant that he could be imprisoned for the rest of his natural life."[49] Rezac claims that he entered the plea agreement based on the incomplete advice of trial counsel and that had he correctly understood the penalties, he would have insisted on going to trial. The State, in contrast, asserts that *State v. Blaha*[50] forecloses this claim.

In *Blaha*, the defendant argued that his trial counsel was ineffective in failing to advise him of the statutory sentencing

---

[47] See *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023).

[48] Brief for appellant at 33.

[49] *Id*.

[50] *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

ranges and that counsel guaranteed a sentence of 12 to 20 years' imprisonment.[51] We found that the record "show[ed] otherwise."[52] In particular, we observed that the record showed that at the plea hearing, the court informed the defendant that the maximum possible sentence for each offense was 50 years' imprisonment; that the defendant denied that anyone had made any promises to him in exchange for his pleas beyond the plea agreement; and that the defendant confirmed that he understood the court alone would decide his sentences.[53] From these statements, we concluded that the record affirmatively refuted the defendant's claim that he was not advised of the statutory sentencing ranges and was promised 12 to 20 years' imprisonment.[54] As such, we found that the defendant's argument was without merit.[55]

We agree with the State that in light of *Blaha*, this claim of ineffective assistance is meritless. At the plea hearing, the district court informed Rezac that his offense was punishable by anywhere from 20 years' imprisonment up to life imprisonment. Rezac stated that he understood the potential punishments. Rezac also stated that the court had not used any words he did not understand; that he understood what he was charged with and did not have any questions; that he understood that within the limits of statute, the determination of an appropriate sentence was entirely up to the court; and that he still wished to plead no contest.

### (c) Advice That Self-Defense
### Was Not Viable Argument

Rezac similarly argues that his trial counsel was ineffective for advising him that self-defense was not a "viable"

---

[51] *Id*.

[52] *Id*. at 424, 929 N.W.2d at 502.

[53] *Id*.

[54] See *id*.

[55] See *id*.

argument and that he should "forget it."[56] Rezac claims that shortly before the shooting, he received a death threat. Rezac claims that considering this threat, he perceived himself to be in imminent danger when Mleya collided with him and then "revved his engine after the collision."[57] As such, Rezac claims that his counsel should not have discounted a self-defense argument and that had he been correctly advised regarding self-defense, he would not have pled no contest and instead would have proceeded to trial. The State, in turn, argues that counsel's performance was not deficient because Rezac could not claim to have acted in self-defense under Nebraska law.

[17] Neb. Rev. Stat. § 28-1409(1) (Reissue 2016) provides, in relevant part, that "the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." We have interpreted § 28-1409 to mean that to successfully assert the claim of self-defense, a defendant must have a reasonable and good faith belief in the necessity of using force.[58] Further, the force used in defense must be immediately necessary and justified under the circumstances.[59]

We agree with the State that Rezac could not claim to have acted in self-defense under these authorities. The record reflects Rezac's belief that at the time of the accident, "'[i]t was [Mleya] or [him].'" However, Rezac's belief in the necessity of force cannot be seen to have been reasonable under the circumstances. As the State observes, "Vehicle collisions are commonplace and are not often intentional attempts to

---

[56] Brief for appellant at 35.

[57] *Id.*

[58] *State v. Johnson*, 314 Neb. 20, 988 N.W.2d 159 (2023).

[59] *Id.*

injure."[60] This particular collision arose while Rezac was backing his vehicle out of his driveway onto the street. In other words, instead of Rezac's being "struck by a car," as he argues,[61] Rezac could be seen to have struck Mleya's vehicle. Also, Mleya was going only 21 miles per hour at the time of impact, and Mleya backed up his vehicle after revving his engine. There is nothing here that would have prompted a reasonable person to connect the collision or revving the engine to the threat made to Rezac. To the contrary, Rezac informed police that he was in an "irrational state of mind" at the time of the collision and that his judgment was likely affected by his prior drug use, essentially acknowledging that his belief in the necessity of force was not reasonable.

Similarly, the force used by Rezac was not immediately necessary and justified under the circumstances. Within 13 seconds of the collision, Rezac had pulled a gun and fired at Mleya's vehicle approximately six times. Rezac did not wait longer before firing to see if anything further would transpire. Nor does he appear to have directed his shots consistent with his claim that he sought only to disable Mleya's vehicle and not to injure Mleya. Instead, Rezac's shots hit the driver's side door and window of Mleya's vehicle.

### (d) Not Explaining Difference Between
### Second Degree Murder and
### Involuntary Manslaughter

Rezac further argues that his trial counsel was ineffective for failing to explain the difference between second degree murder and involuntary manslaughter, or "caus[ing] the death of another unintentionally while in the commission of an unlawful act."[62] Rezac claims that counsel dismissed involuntary manslaughter out of hand because it was "impossible to

---

[60] Brief for appellee at 31.

[61] Brief for appellant at 37.

[62] Neb. Rev. Stat. § 28-305 (Reissue 2016).

argue [that Rezac] acted unintentionally."[63] Rezac claims that had the matter been explained to him, he would have rejected the plea agreement and proceeded to trial. However, Rezac also argues that the record is insufficient to address this claim. The State agrees with Rezac as to the sufficiency of the record on appeal.

We take a similar view. The record before us is devoid of evidence of Rezac's conversations with his counsel regarding this matter or any possible trial strategy that counsel may have had in recommending the plea agreement.

### (e) Not Providing Mental Health Records

Finally, Rezac argues that his trial counsel was ineffective in failing to provide the "mental health records in his possession" to probation or the trial court.[64] Rezac claims that he informed counsel of his mental health history and medications and that he repeatedly asked counsel to ensure the court reviewed this information prior to sentencing. Rezac claims that counsel failed to do so, even after it was discovered that the presentence investigation report lacked any mental health records. Rezac claims that he was prejudiced by counsel's failure because "[the] records contained mitigating information."[65] However, Rezac also claims that the record is insufficient to review this claim on direct appeal. The State, in turn, argues that the claim fails because Rezac cannot show he was prejudiced. Alternatively, the State argues that the record is insufficient to address this claim.

We reject the State's argument regarding the lack of prejudice. As we have explained, when a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice.[66] However, we agree with

---

[63] Brief for appellant at 37.

[64] *Id*. at 39.

[65] *Id*. at 41.

[66] See *Zitterkopf, supra* note 39.

the parties that the record is insufficient to review the claim. The mental health records that trial counsel failed to provide to probation and the court are obviously not part of the record on appeal, and there is no indication of trial counsel's strategy in not providing such records.

## VI. CONCLUSION

The record on direct appeal is insufficient to address two of Rezac's claims of ineffective assistance of trial counsel. Otherwise, finding no merit to Rezac's arguments, we affirm his conviction and sentence.

Affirmed.