IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. BENNETT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

NORMAN L. BENNETT, APPELLANT.

Filed November 25, 2025.    No. A-25-304.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Candice C. Wooster, of Brennan, Nielsen & Wooster Law Offices, for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

RIEDMANN, Chief Judge.

INTRODUCTION

Norman L. Bennett appeals from the judgment and sentencing orders of the district court for Lancaster County. He assigns errors related to the effectiveness of his trial counsel and the allegedly excessive nature of his sentences. We affirm.

BACKGROUND

In August 2024, the State filed an information in the district court charging Bennett with count 1, escape using force or a deadly weapon, a Class IIA felony; count 2, theft by unlawful taking, $5,000 or more, a Class IIA felony; and count 3, robbery, a Class II felony. See Neb. Rev. Stat. §§ 28-912, 28-511, & 28-324 (Reissue 2016); see, also, Neb. Rev. Stat. § 28-518 (Cum. Supp. 2024). In February 2025, pursuant to a plea agreement, the State filed an amended information charging Bennett with count 1, escape, a Class IV felony; count 2, theft by unlawful taking, $5,000 or more, a Class IIA felony; count 3, attempted second degree assault, a Class IIIA felony; count

- 1 -

4, theft by unlawful taking, $500 or less, a Class II misdemeanor; and four separate counts of third degree assault, each a Class I misdemeanor. See §§ 28-912 & 28-518; see, also, Neb. Rev. Stat. §§ 28-201; 28-309; 28-310 (Reissue 2016). Additionally, as part of the agreement, the State agreed to not file additional charges against Bennett. In exchange, Bennett agreed to enter pleas to the amended charges and to not initiate a juvenile transfer hearing.

At the plea hearing, Bennett entered guilty pleas to the amended charges and the State offered the following factual basis.

In June 2024, Bennett was being held at the Youth Rehabilitation and Treatment Center (YRTC) in Lincoln, Nebraska. One evening, another incarcerated juvenile asked a behavioral technician to unlock the door to the "Zen room" so that he could utilize his "coping skill," and she did so. She was then distracted for a brief time.

While the staff member was not paying attention, the juvenile began hitting the window inside the Zen room with a metal pole. Bennett and a third juvenile then began helping. The three boys eventually broke out the window, climbed through, and escaped.

Approximately an hour later, law enforcement responded to a report of a stolen vehicle, which was valued at $16,500. Witnesses informed officers that the car was stolen by three boys who matched the descriptions of Bennett and the other two juveniles who escaped from the YRTC.

Later, law enforcement responded to a report of a robbery occurring at a local grocery store. The victim, a 65-year-old woman, explained that three teenage males, driving a car matching the description of the stolen vehicle, approached her as she was loading groceries and asked to use her phone to make several phone calls. Ultimately, the front seat passenger grabbed her wrist and wrestled the phone away from her. At the same time, the driver began driving away, dragging the woman, and knocking her to the ground. The woman suffered injuries to her ribs, hip, and wrist. Her stolen phone was valued at less than $500.

The woman was able to connect to her phone from another device and inform law enforcement that it was located in Omaha. She also identified the juveniles as the same three she saw on the news who had escaped from the Lincoln YRTC.

The stolen vehicle was found in Omaha and a pursuit was initiated, which involved "multiple units and air wing units." During the pursuit, the three juveniles attempted to flee on foot, but they were all eventually taken into custody.

In October 2024, Bennett was being held at the Lancaster County Youth Services Center (LCYSC) on charges stemming from the June 2024 events. Law enforcement was dispatched to LCYSC on October 20 after receiving a report of an assault. It was reported that, following his assault of other juveniles, Bennett was being restrained by a corrections officer and punched the corrections officer in the face, causing him pain and his glasses to fall off. Another corrections officer then began restraining Bennett but Bennett was able to get his hands free and placed them on this officer's neck, impeding his breathing.

Then, on October 26, 2024, law enforcement was again dispatched to LCYSC. It was reported that Bennett was being held in a cell and had covered up his window. Staff was unable to see in and commanded him to remove the obstruction, but he refused. Staff then opened the door, detained Bennett, and placed him in a restraint chair because he was not complying. Bennett headbutted a juvenile detention officer twice, causing pain and discomfort.

On December 1, 2024, law enforcement was dispatched yet again to LCYSC. It was reported that Bennett had obtained a "steel phone from a rolling cart" and had proceeded to slam the phone into his cell window, breaking the glass. While staff was trying to gain control of Bennett, he headbutted a juvenile detention officer, spit on two others, and punched one in the head, causing pain and a visible mark. Bennett also kicked a juvenile detention officer in her face during the incident, causing pain and redness.

Lastly, in February 2025, law enforcement responded to LCYSC following a report that Bennett was causing a disturbance and refusing to return to his cell. Although he eventually complied, he assaulted several staff members in the process. He punched one in the face and scratched him, pulled a female officer's hair "very hard twice," and punched, bit, and scratched another officer. All three officers reported that Bennett had caused them pain and injury.

Following the State's recitation of the factual basis, the district court found that it was sufficient and accepted Bennett's guilty pleas. It then adjudged him guilty of the charges in the amended information. The court ordered that a presentence investigation report (PSI) be completed and scheduled sentencing.

The sentencing hearing was held in March 2025. Ultimately, the court sentenced Bennett on count 1, to 2 to 2 years' incarceration; on count 2, to 15 to 20 years' incarceration; on count 3, to 3 to 3 years' incarceration; on count 4, to 6 months' incarceration; and counts 5, 6, 7, and 8, to 1 year incarceration on each. All the sentences were ordered to run consecutive to one another and Bennett was given credit for 172 days' time previously served. He now appeals.

## ASSIGNMENTS OF ERROR

Bennett assigns as error, reordered, restated, and condensed, that (1) his trial counsel was ineffective by failing to have him evaluated by a mental health professional prior to sentencing and (2) the sentences imposed by the district court are excessive and therefore constitute an abuse of discretion.

## STANDARD OF REVIEW

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits. *State v. Woolridge-Jones*, 316 Neb. 500, 5 N.W.3d 426 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

### TRIAL COUNSEL NOT INEFFECTIVE

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id*. However, when a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; but an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. See *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

Through new appellate counsel, Bennett asserts that his trial counsel was ineffective by failing to have him evaluated by a mental health professional and to present that evidence to the district court for sentencing purposes. He contends that "it is clear" that he has a developmental disability "of some level" and that, combined with a "juvenile brain that lacks impulse control or the ability to appreciate risk," shows an evaluation would have allowed the district court to fully comprehend "the particular defendant being sentenced." Brief for appellant at 18.

Bennett underwent a psychological evaluation on February 12, 2021, which was not completed due to concerns regarding his competency. A competency evaluation later determined he was competent. He also underwent a cooccurring evaluation on March 19, 2022, and another psychological evaluation on September 27, 2022. The last psychological evaluation disclosed diagnoses of major depressive disorder, recurrent, severe; conduct disorder, mild; and adjustment disorder with mixed disturbance of mood and conduct. The evaluator summarized Bennett "harbors significant sadness and anger, frequently exhausting his emotional resources, and leading to impulsive and self-serving behavior. Lacking insight and coping skills, he ignores and avoids his emotions through excitement seeking." His working memory and processing speed abilities were below average and borderline impaired; however, he had abstract visual reasoning.

In the March 2025 probation report prepared for this case, the probation officer stated that based upon Bennett's affirmative answers to seven of the 18 questions on the mental health screen, he could benefit from receiving a mental health evaluation, but it does not appear as though one was completed prior to sentencing.

Despite the absence of a subsequent mental health evaluation, the PSI contained other multiple assessments and evaluations as detailed by Bennett in his brief. Through these documents, the district court had before it information that Bennett suffered from a learning disability, and it was well aware of Bennett's age. The September 2022 psychological evaluation explained Bennet's impulsivity and poor decisionmaking. Nothing in the record leads us to conclude that the court was in need of an updated evaluation to properly put these issues before the court. Similar to the Nebraska Supreme Court's determination in *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015), there is no reasonable probability that the sentence would have been different if another mental health evaluation had been included in the PSI. This allegation fails.

SENTENCES IMPOSED NOT EXCESSIVE

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed. *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*. Additionally, it is within the discretion of the trial court to impose consecutive rather than concurrent sentences for separate crimes. See *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017). This is true even when the crimes arise out of the same incident. *Id*.

Bennett assigns that the district court imposed excessive sentences. Bennett was ultimately convicted of a Class IV felony, punishable by a maximum of 2 years' incarceration and 12 months' post-release supervision, a $10,000 fine, or both; a Class IIA felony, punishable by a maximum of 20 years' incarceration; a Class IIIA felony, punishable by a maximum of 3 years' incarceration, 18 months' post-release supervision, a $10,000 fine, or both; a Class II misdemeanor, punishable by a maximum of 6 months' incarceration, a $1,000 fine, or both; and four Class I misdemeanors, punishable by a maximum of 1 year incarceration, a $1,000 fine, or both. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024); see also Neb. Rev. Stat. § 28-106 (Reissue 2016). Thus, Bennett's sentences are within the statutory limits. We therefore review only for an abuse of discretion.

The PSI shows that Bennett was 17 at the time of the report and had an 11th grade education. The PSI additionally reflects that Bennett has been involved in the juvenile system for multiple years and has been placed in several foster homes and other care facilities.

The Level of Service Case Management Inventory showed that Bennett scored in the "very high" risk of recidivism range. He scored in the "very high" or "high" risk range in all but three subcategories.

The PSI further discloses that Bennett began using drugs and alcohol at an early age and was involved in gang activity. Also, he was 12 years old when he was charged with his first felony offense, and he has a history of absconding from placements and continuing to engage in criminal activity. Since his initial charge, he has been charged with more than five additional felony offenses and has twice violated juvenile probation. He was also previously sent to a YRTC in Kearney prior to being transferred to a YRTC in Lincoln. It was reported by the Kearney YRTC that Bennett struggled to go more than 3 days without an incident occurring. We also note the present charges arise from Bennett absconding from the Lincoln YRTC.

The PSI also shows that Bennett refused to follow rules while at the LCYSC. He had 13 major incidents while incarcerated there, including making threats to kill staff, making of homemade weapons, and being generally noncompliant. Bennett was no longer allowed to attend school while at LCYSC because he was disruptive, refused to follow instructions, and stole things from the teacher's desk. Moreover, the LCYSC staff reported that Bennett had access to privileges that were typically only available to juveniles who had reached a certain phase of the program, even though he had not reached the requisite stages, because there was no other way to control his behaviors. Bennett continually expressed that he did not care about the potential punishment for neglecting to follow the rules.

Based on the record before us, we conclude the district court did not abuse its discretion by imposing Bennett's sentences as they are not excessive.

CONCLUSION

Bennett's claim that trial counsel was ineffective in failing to request a psychological evaluation for purposes of sentencing is without merit and we find no abuse of discretion in his sentences. We affirm Bennett's convictions and sentences.

AFFIRMED.